[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-12062

_____

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

Plaintiff-Counter
Defendant-Appellee,

*versus*

ANNA BEVILACQUA SPANGLER,
RICHARD DALE SPANGLER,

Defendants-Counter
Claimant-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:20-cv-00360-PGB-LRH

_____

Before WILSON, JILL PRYOR, and HULL, Circuit Judges.

JILL PRYOR, Circuit Judge:

Richard D. Spangler and his spouse Anna Spangler maintained a car insurance policy (the "Policy") with State Farm Mutual Automobile Insurance Company. While the Policy was in force, Anna was involved in an accident in which she was struck and injured by an uninsured driver of an electric motorized scooter. The Spanglers made a claim for her injuries under the Policy's Uninsured Motor Vehicle ("UM") coverage. State Farm denied the claim on the ground that under the Policy the scooter was neither a "motor vehicle" nor an "uninsured motor vehicle," which the Policy defined as a "land motor vehicle." State Farm sued the Spanglers, seeking a declaratory judgment that the Policy provided no coverage. Both parties moved for summary judgment. The district court denied the Spanglers' motion, granting summary judgment in part to State Farm. The district court concluded that a Florida statutory

definition of "motor vehicle" resolved the dispute in State Farm's favor.[1]

On appeal, the Spanglers argue that because the Policy defines "uninsured motor vehicle" as a "land motor vehicle," the plain and ordinary meaning of the term "land motor vehicle" dictates the scope of the Policy, and under the plain and ordinary meaning of the term, the scooter is a covered uninsured motor vehicle. After careful consideration, and with the benefit of oral argument, we agree and therefore reverse the district court's grant of summary judgment to State Farm. We conclude that the Policy defines "uninsured motor vehicle" more broadly than Florida insurance law requires. Because an insurer can provide more UM coverage than the law requires, we decline to disregard the Policy's broader definition of uninsured motor vehicle in favor of a more limited statutory definition of motor vehicle.

## I.    BACKGROUND

We begin by describing the relevant parts of the Policy. We then turn to the underlying accident involving the scooter, including the scooter's specifications, and the litigation that followed.

---

[1] The parties agree that Florida law governs this diversity-jurisdiction action involving the interpretation of an insurance policy issued in Florida. *See Hegel v. First Liberty Ins. Corp.*, 778 F.3d 1214, 1220 (11th Cir. 2015).

## A.　　The Insurance Policy

State Farm issued to Richard Spangler State Farm Car Policy No. D580985594, which insured the Spanglers' 2015 Nissan Altima.[2] The Policy included UM coverage with limits of $100,000 per person and $300,000 per occurrence. Relevant to this dispute, under the Policy State Farm would "pay compensatory damages for bodily injury an insured is legally entitled to recover from the owner or driver of an uninsured motor vehicle." Doc. 1-1 at 25[3] (emphasis omitted). According to the Policy, the "bodily injury for which [State Farm] will pay compensatory damages must be[] sustained by an insured [and] caused by an accident that involves the operation . . . of an uninsured motor vehicle." *Id.* (emphasis omitted). In the section of the Policy pertaining to UM coverage, "[u]ninsured [m]otor [v]ehicle" was defined, in relevant part, as "land motor vehicle." *Id.* at 24. The UM section of the Policy did not define "land motor vehicle."

The Policy's general "Definitions" section established definitions of terms used throughout the Policy. The Policy specified that the definitions were to be used where a defined term appeared in boldface italics. The Definitions section defined a "[m]otor

---

[2] Richard Spangler was the named insured party on the Policy. The Policy included coverage for the spouse of the named insured party if the spouse primarily resided with the named insured. It is undisputed that Anna, as Richard's spouse who primarily resided with him, was an insured party under the Policy.

[3] "Doc." numbers refer to district court docket entries.

[v]ehicle" as a "vehicle with four or more wheels that[] is self-propelled and is of a type[] designed for; and [] required to be licensed for use on Florida highways." *Id.* at 4. The term "land motor vehicle" was not defined in the Definitions section of the Policy, and the words "motor vehicle" within the term "land motor vehicle" in the UM section of the Policy appeared in plain typeface.

The Policy also included an Amendatory Endorsement providing that an "[u]ninsured [m]otor [v]ehicle does not include a land motor vehicle . . . designed for use primarily off public roads except while on public roads." Doc. 1-2 at 6. It is undisputed that the accident occurred on a public road.

## B.    The Accident with the Scooter

While driving on a Florida highway in the insured Nissan Altima, Anna Spangler was struck by a driver operating a Razor Pocket Mod scooter. The Razor Pocket Mod was a "Miniature Electric Euro Style Scooter." Doc. 35-1 at 19. The Razor Pocket Mod's top speed was 15 mph. It had a 250-watt, single-speed motor powered by two 12-volt batteries, with a total battery life of 40 minutes of continuous ride time. It was equipped with two spoked wheels with air-filled tires. The Razor Pocket Mod had twist-grip throttle controls and a hand-operated brake. It was manufactured without a taillight, brake lights, turn signals, or exterior mirrors, and no such equipment had been added. The scooter had no vehicle identification number or license tag, and it was not registered with the Florida Department of Highway Safety and Motor Vehicles.

As a result of the accident with the Razor Pocket Mod, Anna suffered serious injuries to her neck, back, and knee, with surgery expected in the future. Her vehicle sustained a cracked headlight and fog light, crushed front bumper and fender, and cracked passenger side mirror. Tragically, the scooter's driver, who was uninsured, died at the scene. The Spanglers submitted a claim to State Farm for UM coverage in the amount of $100,000 as compensation for injuries Anna sustained in the accident. State Farm denied the claim on the ground that the Razor Pocket Mod was not an "uninsured motor vehicle" under the Policy.

## C.    Procedural History

State Farm brought this action seeking a declaratory judgment that the Policy did not cover the accident because the electric scooter was neither a "motor vehicle" nor an "uninsured motor vehicle" under the terms of the Policy. The Spanglers and State Farm cross-moved for summary judgment on the issue of coverage. In support of its motion and in response to the Spanglers' motion, State Farm argued that the definition of "motor vehicle" that appeared in the general Definitions section of the Policy applied to the UM section of the Policy and, under this definition, the Razor Pocket Mod was not a motor vehicle or an uninsured motor vehicle. State Farm argued further that the meaning of the Policy's term "uninsured motor vehicle" should be interpreted consistently with the definition of "motor vehicle" that appeared in Florida Statutes § 324.021, also known as the Financial Responsibility Law ("FRL"). Under the FRL's definition of "motor vehicle," State Farm argued,

the Razor Pocket Mod was not a motor vehicle and thus was not subject to Florida's UM coverage requirements.

In support of their motion and in opposition to State Farm's motion, the Spanglers argued that the plain and ordinary meaning of the term "land motor vehicle"—the definition of "uninsured motor vehicle" that appeared in the UM section of the Policy—should govern the dispute. Under the term's plain and ordinary meaning, they maintained, the Razor Pocket Mod was an uninsured motor vehicle.

The district court granted in part and denied in part State Farm's summary judgment motion. In denying summary judgment in part, the district court concluded that the definition of "motor vehicle" that appeared in the general Definitions section of the Policy did not define the term as used in the section concerning UM coverage. In granting summary judgment in part, the district court nonetheless concluded that the Razor Pocket Mod was not an uninsured motor vehicle. The court denied the Spanglers' cross-motion for summary judgment for the same reason. The district court entered final judgment in favor of State Farm for the same reason.

To reach the conclusion that the scooter was not covered under the Policy, the district court relied on the FRL's definition of "motor vehicle." The FRL requires every Florida driver operating a motor vehicle on Florida's public roads to maintain proof of "the ability to respond in damages for liability on account of accidents arising out of the use of [a] motor vehicle." *See* Fla. Stat.

§ 324.022(1). Put simply, a driver of a motor vehicle must maintain liability insurance. The FRL defines the term "motor vehicle" as "[e]very self-propelled vehicle that is designed and required to be licensed for use upon a highway." *Id.* § 324.021(1). Considering this definition, the district court determined that the Razor Pocket Mod was not a vehicle designed and required to be licensed for use upon a highway. Thus, the district court concluded, the Razor Pocket Mod was not a "motor vehicle" and, in turn, not an uninsured motor vehicle, meaning UM coverage under the Policy was unavailable to the Spanglers. The Spanglers timely appealed.

## II.    STANDARDS OF REVIEW

We review a district court's grant of summary judgment *de novo*, viewing all evidence and drawing all reasonable inferences in favor of the non-moving party. *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The interpretation of an insurance contract is a matter of law, which we review *de novo. LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1515 (11th Cir. 1997). As a pure question of law, the interpretation of an insurance policy may be decided at the summary judgment stage. *See Tech. Coating Applicators, Inc. v. U.S. Fid. & Guar. Co.*, 157 F.3d 843, 844–46 (11th Cir. 1998); *Coleman v. Fla. Ins. Guar. Ass'n, Inc.*, 517 So. 2d 686, 686–91 (Fla. 1988).

### III.　DISCUSSION

On appeal, the Spanglers argue that the district court erred in granting summary judgment in part to State Farm and in denying their motion for summary judgment because the court adopted the definition of "motor vehicle" found in the FRL to define the Policy term "land motor vehicle," instead of discerning and applying the plain and ordinary meaning of the term. We agree. To explain why, we must first determine the scope and extent of the Policy's UM coverage. To do so, we start by reviewing Florida's principles of contract interpretation. We then look to the plain and ordinary meaning of the term "land motor vehicle" and apply this definition to the Spanglers' claim. Lastly, we explain why the FRL's definition of "motor vehicle" does not dictate the meaning of "land motor vehicle."

### A.　Under Florida Law, the Term "Land Motor Vehicle" Is Given Its Plain and Ordinary Meaning.

First, we must determine the scope and extent of the Policy's UM coverage. Under Florida law, an insurance policy is a contract, and ordinary contract principles govern its interpretation and construction. *Am. Strategic Ins. Co. v. Lucas-Solomon*, 927 So. 2d 184, 186 (Fla. Dist. Ct. App. 2006). The scope and extent of a policy's coverage is defined by the language and terms of the policy, and where the language of a policy is plain and unambiguous, the

policy must be enforced as written. *Allstate Ins. Co. v. Orthopedic Specialists*, 212 So. 3d 973, 975–76 (Fla. 2017).

Although language in a policy is ambiguous if susceptible to more than one reasonable interpretation, the fact that a policy term is undefined does not necessarily mean the term is ambiguous. *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1076 (Fla. 1998). Instead, when a policy term is undefined, "common everyday usage determines its meaning." *Nateman v. Hartford Cas. Ins. Co.*, 544 So. 2d 1026, 1028 (Fla. Dist. Ct. App. 1989) (internal quotation marks omitted); *see also Gov't Emps. Ins. Co. v. Macedo*, 228 So. 3d 1111, 1113 (Fla. 2017) ("When a term in an insurance policy is undefined, it should be given its plain and ordinary meaning . . . ." (internal quotation marks omitted)).

The Policy at issue included UM coverage. The UM section of the Policy required State Farm to "pay compensatory damages for *bodily injury* an *insured* is legally entitled to recover from the owner or driver of an *uninsured motor vehicle*." Doc. 1-1 at 25 (emphasis in original). Within the Policy's UM section, "uninsured motor vehicle" was defined, in relevant part, as "a land motor vehicle." *Id.* at 24. The term "land motor vehicle" was not defined in the Policy.

The term "motor vehicle" was defined in the Policy's general Definitions section but not within its UM coverage section. And the Policy specified that the general definitions applied only where the terms appeared in boldface italics; the term "land motor vehicle" was not in bold typeface or italicized. We agree with the

21-12062                Opinion of the Court                11

district court that the Policy's definition of "motor vehicle" appearing in the general Definitions section does not define the term as used in the UM section. State Farm does not challenge the district court's conclusion on this issue.[4] Thus, the case turns on the meaning of the undefined term "land motor vehicle" and whether the Razor Pocket Mod falls within that meaning.

Faced with an undefined term in the Policy, we defer to Florida's rules of contract construction, which instruct us to give the term its plain meaning as understood by the "[person]-on-the-street," that is, the term's plain and ordinary meaning. *State Farm Fire & Cas. Co. v. Castillo*, 829 So. 2d 242, 244 (Fla. Dist. Ct. App. 2002) (internal quotation marks omitted). To find the plain and ordinary meaning of a policy term, courts may "look to legal and non-legal dictionary definitions to determine such a meaning." *Gov't Emps. Ins. Co.*, 228 So. 3d at 1113 (internal quotation marks omitted); *see also Prudential Prop. & Cas. Ins. Co. v. Swindal*, 622 So. 2d 467, 470 (Fla. 1993) ("Insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties.").

---

[4] Because State Farm has not cross-appealed the denial of summary judgment on this issue, we do not consider whether the meaning of the term "motor vehicle" that appears in the Policy's general Definitions section is incorporated into the Policy's UM coverage section, and in turn dictates the meaning of the term "uninsured motor vehicle" as it appears in the UM coverage section. Instead, we focus on whether the Razor Pocket Mod is an "uninsured motor vehicle," which the UM coverage section defines as a "land motor vehicle."

B.    The Plain and Ordinary Meaning of "Land Motor Vehicle"
      Encompasses the Razor Pocket Mod Scooter.

To determine the plain and ordinary meaning of the term
"land motor vehicle," we begin with the first word, "land." "Land"
means "[a]n immovable and indestructible three-dimensional area
consisting of a portion of the earth's surface, the space above and
below the surface, and everything growing on or permanently af-
fixed to it." Land, Black's Law Dictionary (11th ed. 2019); see also
Land, Merriam-Webster Online Dictionary, https://www.mer-
riam-webster.com/dictionary/land (last visited Mar. 21, 2023)
("[T]he solid part of the surface of the earth[.]"). Put simply, land is
the solid part of the earth. As such, the word "land" includes more
than public roads and highways.

Next, the word "motor": "[A]ny of various power units that
develop energy or impart motion[] such as[] a small compact en-
gine[.]"    Motor,    Merriam-Webster    Online    Dictionary,
https://www.merriam-webster.com/dictionary/motor (last vis-
ited Mar. 21, 2023).

Last, "vehicle": "An instrument of transportation or convey-
ance." Vehicle, Black's Law Dictionary (11th ed. 2019); see also Ve-
hicle, Merriam-Webster Online Dictionary, https://www.mer-
riam-webster.com/dictionary/vehicle (last visited Mar. 21, 2023)
("[A] means of carrying or transporting something[.]"). In other
words, a vehicle is an object that carries or transports something.

Putting the words together, a "land motor vehicle" is (1) a
means of carrying or transporting something, (2) on the solid part

of the earth, while being (3) powered by an engine that imparts motion. *See Scottsdale Ins. Co. v. Kuntz*, No. 2:19-CV-00113, 2020 WL 7074554, at *5 (M.D. Fla. Dec. 3, 2020) (defining land motor vehicle as a means of "carr[ying] or transport[ing] something over the solid part of the surface of the earth while being powered by a gasoline engine that imparts motion"); *Trierweiler v. Frankenmuth Mut. Ins. Co.*, 550 N.W.2d 577, 580 (Mich. Ct. App. 1996) (determining the definition of land motor vehicle to be "a vehicle with a motor that travels on land"). This meaning, derived from dictionary definitions, comports with the term's plain meaning as it would be understood by a person on the street.

Given the plain and ordinary meaning of the term "land motor vehicle," it is apparent that the term is broader than the term "motor vehicle" and encompasses more than vehicles designed for use on public roadways. In fact, the Policy's Amendatory Endorsement states that "[u]ninsured [m]otor [v]ehicle does not include a land motor vehicle . . . designed for use primarily off public roads except while on public roads." Doc. 1-2 at 6. The Endorsement expressly contemplates that a land motor vehicle may be designed for off-road use. Though designed for off-road use, such a vehicle will be covered by the Policy's UM coverage when it is being used on a public road (as the Razor Pocket Mod was here).

Further, the term "land motor vehicle" appears in the UM coverage section without further qualifications[5] or statements that would limit the term to vehicles designed primarily for operation on public roadways—despite the Policy's inclusion of such limiting qualifications and statements elsewhere in the Policy. *See* Doc. 1-1 at 4 (defining car as "a *land motor vehicle* with four or more wheels, *designed for use primarily on public roads*" (emphasis added)). Together with the fact that the Endorsement contemplates that a land motor vehicle may be primarily designed for off-road use, the lack of limiting qualifications and statements further supports our conclusion that "land motor vehicle" has a broader meaning than motor vehicle. We now apply the plain and ordinary meaning of the term to the Razor Pocket Mod scooter.

The Razor Pocket Mod was designed to transport a rider and personal items. It has spoked, inflatable wheels made for traveling on land. It is powered by two 12-volt batteries that provide electricity to a 250W motor. Thus, the Razor Pocket Mod scooter falls within the scope of the plain and ordinary meaning of a land motor vehicle.[6] Because the Razor Pocket Mod is a land motor vehicle,

---

[5] The Policy's definition of uninsured motor vehicle includes qualifications regarding the ownership, maintenance, and use of the vehicle that are not relevant here.

[6] Our conclusion today is in line with other state courts' interpretations of the term "land motor vehicle" as used in insurance policies. *See, e.g.*, *Thedin v. U.S. Fid. & Guar. Ins. Co.*, 518 N.W.2d 703, 705–06 (N.D. 1994) (concluding

21-12062                  Opinion of the Court                  15

we conclude it is an uninsured motor vehicle as defined by the Policy.

## C.     The FRL's Definition of "Motor Vehicle" Does Not Dictate the Meaning of "Land Motor Vehicle" in the Policy.

State Farm argues that to determine whether the Razor Pocket Mod is an uninsured motor vehicle under the Policy, we must "determine[] whether it [is] a motor vehicle in the context of . . . Florida's FRL." Appellee's Br. at 10. We disagree.

Florida's FRL requires an individual who operates a motor vehicle on Florida's public streets and highways to "show proof of financial ability" to compensate for accidents as a "requisite" to operating a motor vehicle in Florida. Fla. Stat. § 324.011. Under the FRL, Florida motorists must maintain liability insurance[7] when

---

that a farm combine was a land motor vehicle under the plain and ordinary meaning of the term even though a state statute provided a more limited definition of the term "motor vehicle"); *Trierweiler*, 550 N.W.2d at 579–80 (concluding that a farm tractor was a land motor vehicle under the plain and ordinary meaning of the term); *Paskiewicz v. Am. Fam. Mut. Ins. Co.*, 834 N.W.2d 866, 867–68 (Wis. Ct. App. 2013) (concluding that a child-sized four-wheel all-terrain vehicle operated by a three-year-old was a land motor vehicle under the plain and ordinary meaning of the term); *Colwell v. State Farm Mut. Auto. Ins. Co.*, 600 P.2d 751, 751–52 (Ariz. Ct. App. 1979) (concluding that a minibike operated by an eight-year-old was a land motor vehicle under the plain and ordinary meaning of the term).

[7] The statute provides other ways in which an operator of a motor vehicle may prove his financial responsibility that are not relevant here. *See* Fla. Stat. § 324.031.

operating a motor vehicle on Florida's roadways. *Id.* § 324.031. The FRL defines a "[m]otor vehicle" as "[e]very self-propelled vehicle that is designed and required to be licensed for use upon a highway." *Id.* § 324.021(1). If an individual operates a self-propelled vehicle that is designed and required to be licensed for use upon a highway, that individual is required to maintain liability insurance.

The FRL works in tandem with Florida's Uninsured Motorist statute ("UM statute"). *Id.* § 627.727. The UM statute requires, in relevant part, that an insurer who offers motor vehicle liability insurance that covers bodily injury also must provide uninsured motor vehicle coverage, unless the insured expressly rejects UM coverage. *Id.* § 626.727(1). The purpose of the UM statute is to place a party injured by an uninsured motorist in the same position as if the uninsured motorist been insured as required by the FRL. *See Mullis v. State Farm Mut. Auto. Ins. Co.*, 252 So. 2d 229, 237–38 (Fla. 1971) ("[UM coverage under the UM statute] is statutorily intended to provide the reciprocal or mutual equivalent of automobile liability coverage prescribed by the Financial Responsibility Law . . . ."); *Schoeck v. Allstate Ins. Co.*, 235 So. 3d 953, 956 (Fla. Dist. Ct. App. 2017).

Taken together, the FRL and the UM statute require that an insurer, at a minimum and in relevant part, provide UM coverage (if the policy provides bodily injury coverage) for "motor vehicles" as defined by the FRL. *See State Farm Fire & Cas. Co. v. Becraft*, 501 So. 2d 1316, 1317 (Fla. Dist. Ct. App. 1986).

21-12062                    Opinion of the Court                    17

State Farm argues that when a term is undefined within a policy's UM coverage, courts must look to the FRL. To support its argument, State Farm cites two Florida Supreme Court decisions: *Grant v. State Farm Fire & Casualty Co.*, 638 So. 2d 936 (Fla. 1994), and *Carguillo v. State Farm Mut. Auto. Ins. Co.*, 529 So. 2d 276 (Fla. 1988). Neither *Grant* nor *Carguillo* changes our analysis, however. Both decisions stand only for the proposition that an insurer must provide UM coverage that is consistent with the purposes of the FRL and UM statute. Neither decision requires that an insurer *only* provide UM coverage for motor vehicles as defined by the FRL. To explain why, we briefly review the Florida Supreme Court's decisions in *Grant* and *Carguillo*.

In *Grant*, the issue before the Florida Supreme Court was whether a motorcycle was a motor vehicle under a car insurance policy. *Grant*, 638 So. 2d at 937. The insured's motorcycle was not listed as a covered vehicle on the policy. *Id.* After an accident involving the motorcycle, the insured sought UM coverage for damage sustained while operating the motorcycle. *Id.* The insurer denied the claim because a policy exclusion barred coverage for injuries that occurred while the insured occupied "a motor vehicle . . . [that] was not insured for . . . coverage under [the] policy." *Id.* (emphasis omitted). In response, the insured maintained that the motorcycle was not a motor vehicle; thus, he argued, the exclusion did not apply. *Id.*

The Florida Supreme Court began by reviewing the policy at issue. *Id.* The no-fault coverage section of the policy defined the

term "motor vehicle," and the preface section of the policy defined the term "car" as "a land motor vehicle with four or more wheels, which is designed for use mainly on public roads." *Id.* (internal quotation marks omitted). The UM section of the policy, however, did not define motor vehicle or car, despite using the term "motor vehicle." *Id.* The Court determined that the definitions that appeared elsewhere in the policy were inapplicable to the policy's UM coverage. *Id.* at 937–38. So, the Court was "compelled to search elsewhere for a sensible and appropriate definition" of the term "motor vehicle." *Id.* at 937. The Court turned to the FRL and its definition of the term. Concluding that the FRL's definition of "motor vehicle" comported with the plain meaning of the term, the Court determined that the motorcycle was a "motor vehicle" as that term was used in the UM section of the policy. *Id.* at 938.

The dispute before us is distinguishable from *Grant*; thus, we see no reason to incorporate the FRL's definition of "motor vehicle" into the Policy. In *Grant*, the policy's UM coverage section did not define the term "motor vehicle." The FRL readily defined the exact term at issue—motor vehicle—and so reliance on the FRL's definition of motor vehicle was "sensible and appropriate." *Id.* at 937. Here, the Policy's UM section defined the term "uninsured motor vehicle" as "land motor vehicle." But the term "land motor vehicle" was not defined in the Policy; thus, unlike in *Grant*, the term at issue here is "*land* motor vehicle." As we previously explained, the word "land" modifies the term "motor vehicle." *See Trierweiler*, 550 N.W.2d at 579 ("We further note that the

exclusionary phrase defendant relies upon is 'land motor vehicle' and not just 'motor vehicle.' The addition of the word 'land' must be accorded meaning[.]"). A motor vehicle as defined by the FRL is a vehicle designed for use on public roads. The use of the word "land," then, as an "adjective modifying motor vehicle . . . must, by a plain reading, mean the vehicle anticipated [by the Policy] was more than a vehicle that would travel only on [public] roads." *Id.* at 579–80. The word "land" expands the scope of the term "motor vehicle." Thus, *Grant* does not control the definition of "land motor vehicle." State Farm points to no provision of Florida law that limits an insurer to providing UM coverage for motor vehicles that fall within the FRL's definition of the term.

Like *Grant*, *Carguillo* arose out of a motorcycle accident. In *Carguillo*, an insurer refused to pay its insured's claim for UM coverage after the insured's son was killed in an accident involving an uninsured motorcycle. *Carguillo*, 529 So. 2d at 277. The accident occurred on a dirt-bike trail. *Id.* The insurer denied UM coverage based on a policy exclusion providing that "[a]n uninsured motor vehicle [did] not include a land motor vehicle . . . designed for use mainly off public roads except while on public roads." *Id.* Because the accident occurred off public roads, the insurer argued that the exclusion applied, and the insured argued that the exclusion was invalid under the FRL. *Id.*

The trial court entered summary judgment in favor of the insurer. *Id.* On appeal, Florida's Fourth District Court of Appeal certified the following question to the Florida Supreme Court:

"Whether a vehicle designed primarily for off-road use can be excluded from uninsured motorist coverage because it is not a motor vehicle within the definition of the [FRL]?" *Id.* at 277 (emphasis and internal quotation marks omitted). The Florida Supreme Court answered that the policy exclusion did not contravene the FRL or the UM statute. *Id.* at 278. The Court explained that the UM statute is "statutorily intended to provide the reciprocal or mutual equivalent of automobile liability coverage prescribed by the [FRL]." *Id.* (internal quotation marks omitted). In other words, an insurer is only required to provide its insured with the same protection "as would have been provided if the tort-feasor had complied with the [FRL]." *Id.* (internal quotation marks omitted).

Because the FRL requires that a driver of a motor vehicle maintain a policy of liability insurance, the Court had to determine whether the motorcycle was a "motor vehicle" as defined by the FRL. If so, the driver of the uninsured motorcycle would have been required by the FRL to maintain liability insurance. And to satisfy the purpose behind the UM statute, the insurer would have to provide at least the protection the insured would have received if the uninsured motorcycle had indeed maintained liability insurance. If the operator of the insured motorcycle was *not* required to maintain liability insurance under the FRL (because the vehicle was not a motor vehicle as defined by the FRL) then the insurer's policy exclusion, excluding coverage for the motorcycle, would not contravene the FRL or the UM statute.

Critically, the Court was not called upon to define any term in the policy. Implicit in its decision was the understanding that the motorcycle *was* a land motor vehicle. The question was whether the motorcycle, a land motor vehicle, could be excluded from coverage when it was not being operated on a public road. That question is not before us today. Here, we must determine in the first instance whether the Razor Pocket Mod is a land motor vehicle. Therefore, *Carguillo* is relevant to this dispute only insofar as it stands for the proposition that a policy exclusion must be consistent with the purposes of the FRL and UM statute. Certainly, Florida courts may incorporate statutory limitations and requirements into an insurance contract to determine a parties' contractual rights, *Found. Health v. Westside EKG Assocs.*, 944 So. 2d 188, 195 (Fla. 2006), but the FRL and UM statute prescribe only the *minimum* requirements. Because State Farm has *not* defined the term "uninsured motor vehicle" in a way that fails to comply with the FRL or UM statute, we see no reason to redefine a Policy term by incorporating a statutory definition. *CTC Dev. Corp.*, 720 So. 2d at 1076 ("[W]hen an insurer fails to define a term in a policy, the insurer cannot take the position that there should be a narrow, restrictive interpretation of the coverage provided." (alteration adopted) (internal quotation marks omitted)). Although there is "no requirement that an insured be protected to a greater extent than that statutorily mandated," *Carguillo*, 529 So. 2d at 278, there is no prohibition against greater coverage. If State Farm saw fit to exclude a vehicle such as the Razor Pocket Mod from UM coverage, it could have done so—provided that such an exclusion would

22　　　　　　　　　Opinion of the Court　　　　　　　21-12062

not violate the minimum requirements of the FRL and the UM statute.

And the Policy's definition of the term "uninsured motor vehicle" as a "land motor vehicle" complies with Florida law. "It is well settled that, as a general rule, 'parties are free to "contract-out" or "contract around" state or federal law with regard to an insurance contract, so long as there is nothing void as to public policy or statutory law about such a contract.'" *Green v. Life & Health of Am.*, 704 So. 2d 1386, 1390 (Fla. 1998) (quoting *King v. Allstate Ins. Co.*, 906 F.2d 1537, 1540 (11th Cir. 1990)). Therefore, a policy may "provide[] all the coverage [a] statute demands, and more." *See Hill v. State Farm Mut. Auto. Ins. Co.*, 375 S.E.2d 727, 729 (Va. 1989) (finding that, where an insurance policy broadly defined motor vehicle, a moped was a motor vehicle despite that the state's "financial responsibility law" excluded mopeds from its definition of motor vehicle, reasoning that an insurer may offer "broader coverage than the minimum prescribed by law").

To sum up, neither *Carguillo* nor *Grant* requires that the FRL's definition of "motor vehicle" be incorporated into a policy that defines "uninsured motor vehicle" more broadly. An insurer may provide more coverage than Florida law requires. Based on the plain language of the Policy, State Farm has done just that—provided more UM coverage than required by Florida law. Thus, because the plain meaning of the term "land motor vehicle" includes the Razor Pocket Mod scooter, and we are unpersuaded by State Farm's argument that the FRL's definition of motor vehicle

determines the scope of the Policy, we conclude that the Razor Pocket Mod is an uninsured motor vehicle under the Policy.

## IV.    CONCLUSION

The district court erred in granting final judgment to State Farm based on its conclusion that the Razor Pocket Mod was not a land motor vehicle and in turn not an uninsured motor vehicle.[8] Accordingly, we reverse the district court's order granting State Farm's motion for summary judgment and denying the Spangler's motion for summary judgment.

**REVERSED.**

---

[8] The Spanglers point out that if an insurance policy term is subject to differing interpretations, the term should be construed liberally in favor of the insured. Because the plain and ordinary meaning of the term "land motor vehicle" is not ambiguous, this rule is inapplicable. *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 166 (Fla. 2003) ("The lack of a definition of an operative term in a policy does not necessarily render the term ambiguous and in need of interpretation by the courts." (internal quotation marks omitted)).