**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-13643

_____

GOAUTO INSURANCE COMPANY,

*Plaintiff-Appellant,*

*versus*

2B CLAIMS SERVICES INC.,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 5:23-cv-00188-AW-MJF

_____

Before BRANCH, GRANT, and HULL, Circuit Judges.

HULL, Circuit Judge:

GoAuto Insurance Company hired 2B Claims Services Inc. to adjust claims arising from a four-car collision caused by GoAuto's insured's daughter. Two injured claimants made an offer to settle their claims for the $15,000 per-person policy limits

($30,000 total) with checks in hand by December 14, 2020. GoAuto agreed to pay the policy limits but insisted on signed releases before it would send the checks. The claimants repeated their demand for checks in hand by December 14. GoAuto let the December 14 deadline pass without sending the checks. Later on, the claimants threatened to sue GoAuto for bad-faith refusal to timely send the checks paying the policy limits. Before any lawsuit was filed, GoAuto settled with the claimants for about $200,000 above the policy limits. GoAuto then sued 2B, blaming 2B for not advising GoAuto about the legal risk of exposure to excess liability for bad-faith conduct.

The district court granted summary judgment for 2B, determining, *inter alia*, that (1) 2B did not breach any duty it owed to GoAuto because giving legal advice to GoAuto about excess liability for bad-faith conduct was outside the purview of 2B as a claims adjuster in this case, and (2) in any event, GoAuto's decision not to send the settlement checks by the December 14 deadline was the cause of GoAuto's alleged damages, not 2B's conduct. GoAuto appealed. After careful review and with the benefit of oral argument, we agree and affirm the grant of summary judgment.

## I. FACTS

### A. Policy and Accident

GoAuto is a Louisiana-based insurer that sells policies in Louisiana, Ohio, Nevada, and Texas. GoAuto provided Louisiana car insurance to Alisha Hill, the insured. Hill's policy had bodily injury limits of $15,000 per person and $30,000 per accident. On

July 31, 2020, Alisha's daughter, Kayranasia Hill, was involved in a four-car pileup in Panama City Beach, Florida, while driving Alisha's car.

## B.    GoAuto's Relationship with 2B

GoAuto retained 2B to provide services related to the July 31 collision. GoAuto's adjuster, Frank "Chip" Collura, was 2B's point of contact. There was no written contract between GoAuto and 2B. Rather, Collura testified that 2B's job was to "[d]o the things that an adjuster would do" such as "[i]nvestigate coverage, investigate liability, handle damages, [and] address injury claims."

GoAuto retained full decision-making authority as to coverage, liability, and settlement of the claims. At no time did 2B have check-writing authority.

## C.    Initial Investigation

From the outset, GoAuto was concerned about excess exposure to its insured Hill because of her low policy limits. Indeed, there were multiple potentially competing claimants, including Harold and Milagros Lacey and Walter Hamer. On August 5, 2020, the Laceys' attorney Les McFatter sent GoAuto a letter of representation for bodily injury claims arising from the July 2020 collision. On August 10, Hamer's attorney also sent a letter of representation.

On August 14, 2020, 2B prepared a report showing that GoAuto's insured's daughter was at fault for a rear-end collision affecting three other cars and involving (1) three third parties

represented by counsel (the Laceys and Hamer) and (2) two third parties who described injuries at the scene (but never made claims).

On August 17, 2020, GoAuto acknowledged its insured's daughter was liable for the collision. GoAuto instructed 2B to send a letter, drafted by GoAuto, to the insured Alisha Hill. On September 9, 2020, 2B sent the letter to the insured advising the claimants' damages may exceed her policy limits, and should that occur, the insured would be personally liable for any excess of the policy limits.

### D.    Laceys' September 11 Demand Letter

On September 11, 2020, the Laceys submitted a time-limited demand each seeking the $15,000 per person policy limits and attaching medical records showing damages well in excess of that amount. With GoAuto's authority, 2B requested a time extension from the Laceys for more time to investigate the other potential claimants.

### E.    GoAuto's Continued Investigation of Hamer's Claim

Over the next few months, GoAuto had 2B attempt to rule out exposure from other claimants. On September 30, 2B received a letter from Hamer's attorney dropping representation. 2B made multiple calls to Hamer personally to see if he was still pursuing a claim.

On November 13, 2020, GoAuto asked 2B if it could send Hamer a final notice letter setting a deadline for Hamer to make a claim. 2B responded that, "[u]nfortunately, we have to exhaust

24-13643                Opinion of the Court                5

every avenue to confirm his injuries before we can move forward with something like that. Since Florida has a 4 year [bodily injury] statute, it can go on for some time." 2B suggested performing a "cold call," sending someone to Hamer's home to make contact and to determine Hamer's intentions. GoAuto did not grant authorization to do so at that time.

## F.    Laceys' November 25 Demand Letter

On November 25, 2020, the Laceys sent their second time-limited demand, which again asked for the policy limits of $15,000 per person.[1]

The Laceys, through their attorney McFatter, sent the demand letter to Shawn Harris, the 2B adjuster who had been assigned to the case. But 2B had terminated Harris in early November 2020 and was not regularly monitoring Harris's email inbox. Thus, the 2B adjuster newly assigned to the case, Deanna Gage, did not discover this November 25 demand until McFatter sent a follow-up email on Wednesday, December 2, 2020—two days before the December 4 deadline.

---

[1] In the November 25 demand letter, the Laceys' attorney stated, "I ask that such a tender be made no later than 5:00 p.m. on Friday, December 4, 2020," followed by instructions on how to address the checks. 2B contends this constituted a checks-in-hand condition. GoAuto asserts that the letter required only policy-limits offers by the December 4 deadline. It is not necessary to resolve this issue because the Laceys sent another demand letter that had a clear checks-in-hand requirement and, as explained later, the deadline changed to December 14, 2020.

### G.    Events of December 3 and Laceys' Extension to December 14

On the morning of December 3, 2020, Gage (the 2B adjuster) advised Collura (the GoAuto contact) about the Laceys' second (November 25) demand letter. Collura said he would need to speak to his supervisor about what to do about Hamer's claim. Collura told 2B to seek another extension from the Laceys and to evaluate the Laceys' claims so that GoAuto could authorize a policy-limits payout.

A few hours later, GoAuto authorized 2B to make the "cold call" on Hamer's home. The cold call was ordered the same day, and Hamer received a final notice letter, which stated that Hamer would have 10 days, until December 13, 2020, to advise 2B whether Hamer would be pursuing a claim.

Also on December 3, 2B requested a 20-day extension from the Laceys' attorney. The attorney instead granted a 10-day extension, until December 14, 2020. The Laceys' agreement included a "stipulation that the policy limits settlement checks . . . **physically arrive at [McFatter's] office no later than 5:00pm on Monday, December 14, 2020**."

On the afternoon of December 3, 2B forwarded the demand email to GoAuto. 2B explained that the extension was granted "with the stipulation that they have to have physically received the checks in their office." As of at least December 3, GoAuto knew about the Laceys' checks-in-hand requirement by the December 14 deadline.

The same day, Collura at GoAuto spoke with Florida attorney Rob Squire for advice on whether it was handling Hamer's claim appropriately. Squire advised that GoAuto was "doing due diligence as outlined in good faith to make attempts *to settle all claims*." (Emphasis added). GoAuto contends that this conversation discussed "whether GoAuto had any bad-faith exposure in connection with Hamer's claim, *not* in connection with the Laceys' claim[s]."

## H.    Events on December 9–11, 2020

On December 9, 2020, GoAuto asked 2B if Hamer would make a claim. 2B responded that Hamer making a claim seemed unlikely because 2B had not heard anything from him since the cold call and final notice letter.

On December 10, 2B emailed GoAuto its final claim evaluations for the Laceys and requested that GoAuto grant authority to make policy limits offers to the Laceys.

GoAuto responded to 2B that "should there be no action by Hamer, [GoAuto] will have an offer to settle on 12/14 and will then need releases and will mail checks asap[,] but that checks in hand would not be possible on Monday[, December 14]." GoAuto instructed 2B to email and inform the Laceys "what we are able to do in regards to responding to the time demand by 12/14/20 with an offer."

2B emailed the Laceys' attorney and advised that if Hamer did not present a claim by December 13, 2020, GoAuto would make policy-limits offers to the Laceys, but GoAuto could not

deliver checks by the December 14 deadline.  2B further relayed that if the offers were accepted by the Laceys, GoAuto would need executed releases to issue the checks.

On December 10, 2B also spoke to GoAuto over the phone with the insured Hill on the line.  GoAuto and 2B advised the insured about what was going on, that GoAuto would move forward to resolve the Laceys' claims to protect her interest, but that if Hamer made a claim, there would not be any policy money left and she potentially could face liability personally.

Notably too, on December 10, GoAuto again spoke to Florida attorney Squire, who advised that GoAuto was doing its "due diligence" regarding Hamer.  Collura, the GoAuto adjuster, made a note that Squire stated, "we have done everything we can do to resolve cases and protect insured."  As of December 10, GoAuto had twice called attorney Squire.

After business hours on December 10, the Laceys' attorney McFatter responded to 2B that the Laceys did not agree to GoAuto's proposal of offers on December 14 with checks contingent on executed releases.  The Laceys were still insisting on checks in hand by December 14.

2B sent McFatter's email to GoAuto the next day (December 11).  2B wrote, "Please be advised the attorney did respond to that email I sent yesterday stating they are not in agreement with our timeline of responding to the demands. I have attached the email for your file just in case."  2B continued, "At this

point, we have documented what we can do and if they want to be hard nosed then that's up to them and not much else we can do."

On December 11, GoAuto even directly called the office of McFatter, the lawyer for the Laceys. Speaking to a paralegal, GoAuto advised that it needed signed releases before checks could be issued. The paralegal reiterated the checks-in-hand requirement and would not discuss other options or what would happen if GoAuto did not deliver checks on December 14.

On December 11, GoAuto authorized 2B to make policy-limits offers to the Laceys but did not authorize checks.

GoAuto gave two reasons to 2B and the Laceys for not sending the checks. First, GoAuto said that it was incapable of delivering checks to the Laceys by December 14 due to needing to allow Hamer 10 days (until December 13) to respond to its final notice letter. Second, and in any event, GoAuto insisted that it would need executed releases from the Laceys *before* it could write checks.

It is undisputed that if GoAuto had delivered checks by 5 p.m. on December 14, 2020, the Laceys would have settled and their claims would have been resolved.

## I.    The December 14 Deadline Passes

Walter Hamer did not make a claim by December 13, 2020. On December 14, 2020, at GoAuto's direction, 2B sent an email making policy-limits offers to the Laceys and attaching the releases. The email stated that once the signed releases were received,

GoAuto would then process the payments and send them overnight. The Laceys did not respond.

## J.    The Ultimate Resolution

Despite multiple follow up attempts, 2B did not hear from the Laceys until September 30, 2021, when the Laceys advised 2B that they would not accept a within-policy-limits offer. On October 29, 2021, 2B received the Laceys' time-limited $400,000 demand to settle their claims, alleging bad faith by GoAuto in not delivering the checks by December 14, 2020.

GoAuto then dismissed 2B and hired Florida attorney Steve Leiter. GoAuto settled the Laceys' claims for $250,000, which was $220,000 above the policy limits.

Ten months after GoAuto dismissed 2B, on September 8, 2022, GoAuto sent a $235,249.85 demand letter to 2B, which included (1) the $220,000 excess settlement, (2) defense counsel fees, and (3) the fees 2B charged GoAuto.

## II.  PROCEDURAL HISTORY

## A.    Complaint and Motion

In July 2023, GoAuto sued 2B in the Northern District of Florida.[2]    Before 2B answered, GoAuto filed a first amended

---

[2] The district court had diversity jurisdiction under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeded $75,000 and GoAuto and 2B are citizens of different states. GoAuto is a Louisiana corporation with a principal place of business in Baton Rouge, Louisiana, and 2B is an Arizona corporation with a principal place of business in Arizona. "In diversity cases, we are

complaint as of right.  *See* Fed. R. Civ. P. 15(a)(1)(B).  This is the operative complaint.  GoAuto raised claims of (1) breach of fiduciary duty, (2) professional negligence, and (3) negligent misrepresentation.  As damages, GoAuto sought $235,349.85, plus interest, attorneys' fees, and costs.  2B filed an answer, denying liability.  The parties engaged in discovery for about a year.

In July 2024, 2B moved for summary judgment, arguing that (1) there was no fiduciary relationship between GoAuto and 2B and thus no breach; (2) 2B had no professional duty to warn of potential bad-faith exposure and could not have such a duty because it would constitute unauthorized practice of law; (3) 2B never misrepresented any material facts; and (4) 2B's conduct was not the proximate cause of GoAuto's alleged damages.

In opposition to summary judgment, GoAuto argued that there were genuine disputes of material fact as to the nature of GoAuto and 2B's relationship and causation that precluded summary judgment.

## B.    Hearing on Summary Judgment

A hearing on the summary judgment motion was held on October 4, 2024.  At the hearing, GoAuto made a few concessions that are relevant to the district court's analysis and this appeal.

---

required to apply the substantive law of the forum state; here, Florida." *Pelaez v. Gov't Emps. Ins. Co.*, 13 F.4th 1243, 1249 (11th Cir. 2021) (quoting *Mesa v. Clarendon Nat'l Ins. Co.*, 799 F.3d 1353, 1358 (11th Cir. 2015)).

For starters, GoAuto noted that its three claims were interrelated and all essentially variations of a negligence claim. As negligence claims, GoAuto had to show that 2B owed a duty, there was a breach of that duty, there were damages, and the breach of that duty was the proximate cause of its damages.

GoAuto also conceded there could be no causation if GoAuto did not act in bad faith because, if there were no bad faith, GoAuto would have had no reason to pay the Laceys above the policy limits.

In addition, GoAuto asserted that the Laceys' bad-faith claim accrued on December 14, 2020, when GoAuto failed to physically deliver the checks. As GoAuto's counsel summarized, "If the check[s] had been delivered by 5 p.m. on Monday, December 14th, there would[] have been no bad faith, the claim would have settled for $30,000, [and] we would not have paid another $220 grand."

## C.    District Court's Order

The district court granted summary judgment for 2B on several grounds. First, the district court reasoned that GoAuto could not succeed on any of its claims without showing that 2B's conduct proximately caused GoAuto's damages. 2B could only have proximately caused the damages if the Laceys had a meritorious bad-faith claim against GoAuto. The district court concluded that viewing the evidence in the light most favorable to GoAuto, no reasonable jury could find GoAuto acted in bad faith. The district court reasoned that (1) it was reasonable for GoAuto to investigate and try to rule out Hamer's claim before settling the

Laceys' claims; (2) it was reasonable for GoAuto to make check delivery contingent on signed releases; and (3) the Laceys' arbitrary demands contributed to the failure to settle.

Second, the district court concluded that 2B had no duty to advise GoAuto on avoiding extracontractual, bad-faith liability, which would constitute legal advice. The district court explained that advising on bad-faith liability is fundamentally different from the normal duties of a claims adjuster because "[i]t does not arise from the accident itself, but from the insurer's conduct thereafter," and "[i]t is not about potential liability of insureds, but of insurers." The district court determined that GoAuto had (1) cited no authority suggesting that adjusters had a responsibility to advise on bad-faith liability; (2) pointed to no facts in the record showing that GoAuto expected or sought advice on bad-faith liability from 2B; and (3) offered no real counterargument to 2B's assertion that offering such advice would constitute unauthorized practice of law.

Finally, the district court concluded that aside from the failure to offer advice on bad-faith liability, any other negligent conduct by 2B, such as the failure to monitor a former employee's email inbox, was not the proximate cause of GoAuto's injuries because it did not cause GoAuto to not deliver the checks.

The district court entered final judgment in favor of 2B, and GoAuto timely appealed.

### III.  DISCUSSION

We review *de novo* a district court's summary judgment ruling, viewing all evidence and drawing all reasonable inferences in favor of the non-moving party.  *State Farm Mut. Auto. Ins. Co. v. Spangler*, 64 F.4th 1173, 1178 (11th Cir. 2023).  "Summary judgment is appropriate only 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Id.* (quoting Fed. R. Civ. P. 56(a)).

Granting summary judgment for the defendant is appropriate if the non-moving plaintiff has failed to create a factual issue as to an essential element of its case.  *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  "Causation is an essential element of negligence—a plaintiff is entitled to recover only for injury, loss, or damage caused by a defendant's negligence."  *Pla v. Rierson*, 406 So. 3d 1027, 1032 (Fla. Dist. Ct. App. 2025) (quoting *Lancheros v. Burke*, 375 So. 3d 927, 929 (Fla. Dist. Ct. App. 2023)).

### A.    Elements of GoAuto's Claims

As GoAuto conceded below, all three of its claims are variations on a standard negligence claim.  As such, all three claims required GoAuto to show (1) 2B owed a duty; (2) there was a breach of that duty; (3) there were damages; and (4) the breach of that duty was the proximate cause of the damages.  *See Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002) (explaining the elements of breach of fiduciary duty); *Moransais v. Heathman*, 744 So. 2d 973, 975–76 (Fla. 1999) (professional negligence); *Gilchrist Timber Co. v.*

*ITT Rayonier, Inc.*, 696 So. 2d 334, 337 (Fla. 1997) (citing Restatement (Second) of Torts § 552(1) (A.L.I. 1977)) (negligent misrepresentation).

GoAuto contends 2B owed a duty to advise GoAuto of the legal risk of liability from bad-faith conduct. Some table setting first about what gives rise to a bad-faith claim.

### B.     Florida Law on Bad-Faith Claims

Under Florida law, an insurer, like GoAuto, owes a duty of good faith to the insured. *Bos. Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980) (per curiam). Although the duty is one that the insurer owes to the insured, Florida law allows a cause of action by which a claimant (the Laceys) can sue the insurer (GoAuto) for its failure to settle on the insured's behalf. *Eres v. Progressive Am. Ins. Co.*, 998 F.3d 1273, 1278 (11th Cir. 2021) (citing *Bos. Old Colony*, 386 So. 2d at 785).

The duty of good faith includes several obligations, including, as relevant here, a duty to "settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so." *Bos. Old Colony*, 386 So. 2d at 785. "[T]he critical inquiry in [] bad faith is whether the insurer diligently, and with the same haste and precision as if it were in the insured's shoes, worked on the insured's behalf to avoid an excess judgment." *Harvey v. GEICO Gen. Ins. Co.*, 259 So. 3d 1, 7 (Fla. 2018). When there is no dispute over liability and the injuries vastly exceed policy limits, a reasonable person will do "everything possible" to meet "reasonable demands." *See id.* at 9. Whether an

16                    Opinion of the Court                    24-13643

insurer acted in good faith is based on the "totality of the circumstances." *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 680 (Fla. 2004).

Here, there is no dispute that the insured's daughter caused the accident and the Laceys' claims exceeded the insured's policy limits. Accordingly, the Laceys demanded settlement and *payment* of the policy limits with checks in hand by December 14. GoAuto refused to deliver the checks and pay by December 14. Later, the Laceys made their claim that GoAuto in bad faith failed to settle and *pay* the policy limits on its insured Hill's behalf. GoAuto then paid the Laceys $250,000 to settle their bodily injury claims against the insured Hill and bad-faith claim against GoAuto.

GoAuto now seeks to recover the $220,000 in excess of the $30,000 policy limits paid to the Laceys and the fees GoAuto paid to its attorney and 2B.

C.    **Proximate Cause of GoAuto's Damages**

The main obstacle for GoAuto is that GoAuto decided not to pay and deliver the checks without signed releases, and thus GoAuto's own conduct—not 2B's—caused the bad-faith claim.[3] As GoAuto conceded below, there would have been no bad-faith

---

[3] We recognize the district court determined that no reasonable jury would find GoAuto acted in bad faith by wanting the releases first. We need not evaluate the merits of the Laceys' bad-faith claim against GoAuto because there would have been no such claim if GoAuto had settled by delivering the checks by December 14.

claim at all and GoAuto would not have paid the $220,000 if GoAuto had delivered checks on December 14, 2020.

The record undisputedly shows that GoAuto had time to pay and deliver the checks to the Laceys. The Laceys made their policy-limits demand with the checks-in-hand requirement on December 3, 2020, eleven days before the December 14 deadline. 2B forwarded the Laceys' demand to GoAuto the same day. 2B's email even highlighted the fact that the Laceys' demand included a requirement that the checks physically arrive.

Instead of sending checks, GoAuto tried to counteroffer that it would provide offers on December 14 with promises of checks to follow as soon as it received the Laceys' signed releases. The Laceys twice refused (first through their attorney and then his paralegal). By December 11, GoAuto once again knew that the Laceys were still insisting on checks-in-hand by December 14—just as the Laceys had since December 3. GoAuto easily could have overnighted the checks.

Moreover, 2B could not settle without GoAuto's authorization, and only GoAuto could authorize and deliver the checks. If the checks had been delivered on December 14, the Laceys' claims would have settled within policy limits and GoAuto would have incurred none of the damages sought here. GoAuto's conduct, not 2B's, caused the settlement failure.

GoAuto stresses 2B's negligent acts in failing to monitor an ex-employee's email inbox to relay the November 25 demand and 2B's failure to resolve whether Hamer was going to make a claim

sooner. Those failures are irrelevant because by December 3 2B had informed GoAuto about the checks-in-hand requirement but GoAuto chose to insist on signed releases first before paying. GoAuto's own decision to insist on releases and not send the checks by December 14, not 2B's conduct, thwarted the policy-limits settlement and caused the subsequent bad-faith claims.

## D.    2B's Duties Regarding Bad-Faith Liability

To avoid the consequences of its own conduct thwarting the Laceys' settlement, GoAuto argues 2B had a duty to advise and warn GoAuto of the legal risk of excess liability above the policy limits from bad-faith conduct if GoAuto did not send the checks as demanded. We disagree.

As a threshold matter, the claims 2B was hired to adjust were the Laceys' claims for property damage and bodily injury caused by the accident involving the insured Hill's daughter. There was no written contract between GoAuto and 2B, but the record shows the scope of the engagement was to adjust the claims for property and personal injury damage caused by the insured's daughter's accident.

Importantly too, nothing in the record indicates that GoAuto sought or expected 2B to provide advice about such extracontractual liability (in excess of the policy limits) for bad-faith conduct. Worth noting, GoAuto twice spoke to a Florida attorney during December 2020 about whether it was doing its "due diligence." Even accepting GoAuto's contention that it only discussed Hamer's claim with the attorney and not the Laceys'

claims, the fact GoAuto reached out to the attorney at all shows that it was not relying on 2B for advice, legal or otherwise, about excess liability above the policy limits based on GoAuto's own conduct.

Furthermore, whether an insurer acted in bad faith is a fact-intensive determination. *See Berges*, 896 So. 2d at 680. Assessing the legal risk of bad-faith exposure beyond the policy limits would require skill and knowledge of the law, interpreting case law, applying that law to the facts, and predicting the legal consequences of taking a certain course of action. Advising an insurer about its legal risk of incurring bad-faith liability is basically legal advice. GoAuto has never asserted that 2B's claims adjusters were lawyers. 2B's adjusters had no duty to provide such unsolicited legal advice to GoAuto about excess bad-faith liability.

For all these reasons, the district court correctly concluded that 2B, as a claims adjuster, did not have a duty to advise GoAuto about its legal risk of excess liability beyond the policy limits from bad-faith claims against GoAuto. Because 2B did not have a duty to warn GoAuto about the legal risk of bad-faith liability, 2B was not responsible for GoAuto's decision not to deliver checks to the Laceys on December 14, 2020. That failure was attributable to GoAuto's choices alone.

## IV. CONCLUSION

We affirm the district court's grant of summary judgment for defendant 2B.

**AFFIRMED.**